*E-filed 10/28/05*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARON RAKICH,<br><br>    Plaintiff,<br><br>v.<br><br>EMC CORPORATION, et al.,<br><br>    Defendants. | Case No. C03-04205 JF (HRL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS TO COMPEL** |

On October 18, 2005, this court heard three motions of plaintiff Caron Rakich to compel discovery. Defendant EMC Corporation ("EMC") opposed the motion. Based upon the papers submitted, and the arguments of counsel, the court issues the following order.

**BACKGROUND**

Defendant EMC produces and sells data management and storage products. Plaintiff Caron Rakich was hired by EMC as a Program Sales Representative in November, 2000. Plaintiff was a "NAS overlay representative:" her job was to promote one type of product, Network Attached Storage ("NAS") systems. Plaintiff was to be paid commissions for all NAS products sold in her sales area, known as the "Gelbach" territory. After approximately six months of employment, plaintiff was laid off as part of a company wide reduction in force ("RIF"). Just prior to her lay off, plaintiff was put on a 30-day Performance Improvement Plan ("PIP"). She was terminated halfway through the PIP.

Plaintiff raises three basic claims: sex discrimination, wrongful termination, and failure to pay commissions owed.

1   Plaintiff propounded her first Request for Production of Documents ("RFP") in March 2004.
2   Defendant first responded with boilerplate objections. After some exchange of letters about the
3   adequacy of defendant's response, the parties held a two-hour "meet and confer" conference in June
4   2004.[1] Soon after, Littler Mendelson substituted in as counsel for defendant and the parties held a
5   second "meet and confer" on September 8, 2004. After further exchanges of letters, defendant
6   provided an amended response to the Request for Production, indicating that documents would be
7   produced.

8   Defendant notified plaintiff that sales information, a main component of the document request,
9   would only be produced upon execution of protective order. The parties haggled over the terms of
10  the protective order, which was eventually filed in March 2005. Defendant then produced some
11  documents to plaintiff, who nevertheless was disappointed at the level of production. The parties
12  continued to exchange letters but reached little resolution about many of the items in dispute. The
13  close of discovery was August 26, 2005. Plaintiff now moves to compel the production of documents
14  touching on almost every aspect of the first Request for Production.[2]

**DISCUSSION**

**I.      Preliminary Issues**

   **A.      Timeliness**

18  Defendant asserts that plaintiff's motions to compel should be rejected because plaintiff waited
19  too long to bring them—almost a year after the discovery requests were first propounded and two
20  weeks after the close of discovery.

21  Civil Local Rule 26-2 provides: "Where the Court has set separate deadlines for fact and
22  expert discovery, no motions to compel fact discovery may be filed more than 7 court days after the
23  fact discovery cutoff." Plaintiff's motions met this deadline.

---

[1] At that time, defendant was represented by the law firm, Paul Hastings.

[2] Fault for the enormity of this unwieldy discovery dispute is shared equally by plaintiff and defendant. Plaintiff's discovery requests were often overbroad, disorganized and vague, as are her motions to compel. Defendant, in turn, was not forthcoming with information and parsed words rather than provide responsive documents. The result is inefficiency and unnecessary work for the court.

United States District Court
For the Northern District of California

Moreover, as plaintiff points out, the protective order demanded by defendant was not put in place until March 2005. Only then did defendant begin to produce financial records, which it continued to do throughout the spring of 2005. Furthermore, on September 6, 2005, the parties stipulated to extend time for defendant to bring a motion to compel further deposition testimony from plaintiff. Plaintiff filed the current motions the next day.

### B. Meet and Confer Efforts

Defendant repeatedly asserts that plaintiff failed to adequately meet and confer before filing these motions. Both parties provide copious evidence of their meet and confer efforts, and the court is not convinced that they were insufficient. The parties' correspondence demonstrates that they disagreed about almost every aspect of the document production. At the hearing on this motion, the court offered the parties an opportunity to further meet and confer before the court issue its ruling—plaintiff accepted, while defendant declined. As a result, defendant's reliance on the lack of meet and confer efforts as a reason to withhold discovery appears to be nothing but pretext.

### C. Plaintiff's Overfiling

Plaintiff has subverted the page limit for motions set out in Local Rule 7-2 ("one filed document not exceeding 25 pages in length") by filing three separate motions to compel directed to a single set of RFP's. The motions are repetitive, and plaintiff could have shortened her arguments considerably. Plaintiff also moved the court for leave to file a surreply to bring to the court's attention "evidence" of defendant's concealment of discovery and the need for electronic production. That motion is denied. Not only is the relevance of the evidence unclear, but plaintiff has had a more than sufficient opportunity to articulate her arguments.

### D. Defendant's Data Storage and Discovery Search Methodology

Much of the dialogue at the hearing on these motions concerned defendant's methods of data storage, and how it has searched for responsive documents for discovery in this litigation. Plaintiff is concerned that defendant has not been forthcoming about what data it stores, and has not adequately searched for responsive documents. For example, counsel for defendant insists that EMC keeps no emails after one month, which the court finds to be an unusual practice, especially for a data storage company.

Accordingly, defendant must submit the following by November 10, 2005:

1) An affidavit from the head of defendant's internal Information Technology department (or equivalent) explaining defendant's data storage, backup, and email retention policies and procedures. This affidavit should also describe any policies for retaining data when an employee makes an internal claim of discrimination against another employee or the company, and when an employee files a lawsuit against another employee or the company.

2) Affidavits from both in-house and outside counsel primarily responsible for document production in this litigation detailing the scope and nature of the methods and procedures used for searching for and collecting responsive documents and information.[3]

### E. General Objections and Limitations on Scope of Production

Plaintiff argues that the "General Objections and Limitations" in defendant's response to the RFP are improper and should be overruled. One such exception reads "EMC assumes no obligation to voluntarily supplement or amend these responses to reflect information, evidence, documents or things discovered following service of these responses."

Defendant responds that the real problem is the scope of plaintiff's requests, which often have no limitation as to time period, geographic location, or subject matter. At the hearing, counsel for defendant noted that EMC does continue to supplement its production when new discovery surfaces.

Grounds for objection to discovery requests must be stated with specificity. *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981). This is particularly true with claims of privilege. *Id.* The Federal Rules of Civil Procedure govern discovery and may not be subverted with a simple caveat. While it is true that plaintiff's requests are in some instances overbroad, this does not justify defendant's arbitrary limitations on production, even if it does not in fact adhere to those limitations. Accordingly the "General Objections and Limitations" are overruled.

### F. Attorney-Client and Work Product Privilege

Plaintiff asserts that defendant has waived any claims of attorney-client and work product privileges by not producing a privilege log.

---

[3] Depending on the sufficiency of the declarations, the court could decide to hold an evidentiary hearing on the adequacy of defendant's discovery compliance.

4

1   Defendant argues that a privilege log is not required if a category of documents is not
2   discoverable. It asserts that because attorney-client communications and attorney work-product are
3   not discoverable, no privilege log is required. At the hearing, defendant's counsel admitted that some
4   correspondence between EMC's in-house lawyers and employees has been withheld, and agreed to
5   produce a privilege log detailing these documents.
6   In addition, defendant must produce a log detailing all documents it has failed to produce on
7   grounds of either attorney-client or work product privilege, except for those documents between
8   EMC and outside counsel relating directly to this law suit. The log should conform to the guidelines set
9   forth in the Federal Rules of Civil Procedure. *See, e.g.,* FED. R. CIV. P. 26(b), advisory committee
10  notes to 1993 amendments ("the party must provide sufficient information to enable other parties to
11  evaluate the applicability of the claimed privilege or protection.").

**II.     Motions to Compel**

Plaintiff's motions to compel cover several areas of discovery, including: 1) plaintiff's employment records;  2) sales and commissions records; 3) employment manuals, policies and procedures; 4) documents and information related to the EMC's reduction in force; 5) documents and information related to the job performance and treatment of comparator employees; 6) affirmative action plans and statistics; 7) past complaints of discrimination and investigations thereof; and 8) electronic discovery of email files and electronic databases.[4]

**A.     Plaintiff's Employment Records (RFP Nos. 29, 71, 72, 91, 92)[5]**

Plaintiff requests information relating to her employment at EMC, such as wage information and paychecks, her personnel file, and comments on her work performance.

Plaintiff has a laundry list of complaints about defendant's production in this area: 1) critical documents are redacted, such as the "Human Resources Requisition Report" (an internal document used when plaintiff was first hired); 2) defendant has refused to provide documents and information

---

[4] Where possible, the court has tried to designate the particular RFP numbers that apply to each category. However, the court is more interested in the subject matter of the discovery than the particular RFP number associated with it. There is also significant repetition in the RFP's, making precise numerical organization for purposes of this order somewhat problematic.

[5] Non-party personnel files and RIF documents are discussed later in this order.

5

1  relating to plaintiff's paychecks; and 3) defendant objected to a number of requests on grounds of
2  attorney-client privilege but provided no privilege log.

3  Defendant responds that it has produced all of plaintiff's personnel and employment records,
4  such as plaintiff's Key Employment Agreement, payroll records, performance improvement plans, and
5  correspondence relating to plaintiff's performance and wages.

6  Having reviewed the RFP's listed above, the court finds that they are all directly relevant to
7  plaintiff's case, particularly her claims of sex discrimination and unpaid commissions. While it appears
8  that defendant has produced some of this documentation, information was redacted with no
9  explanation.  Accordingly, all information responsive to the RFP's listed above should be produced in
10 *unredacted* form: the "Human Resources Requisition Report;" plaintiff's entire personnel file; all
11 documents, including emails, referring to, relating to, commenting on, or discussing her employment
12 and job performance at EMC; and all documentation, including emails, relating to plaintiff's paychecks
13 and wages.[6]

**B.   Sales and Commissions Records (RFP's Nos. 25, 26, and 27)**

15 These RFP's relate to plaintiff's commission calculations for 2001, general sales in plaintiff's
16 sales area, and sales on accounts that plaintiff worked on outside her area.

17 Plaintiff complains that: 1) defendant has limited its production to documents that "support
18 plaintiff's 2001 commissions," rather than all sales information in plaintiff's area; 2) information
19 provided does not reflect all major accounts on which plaintiff worked, and does not include all sales
20 orders, purchase orders, and booking dates; and 3) many of these documents were redacted or
21 produced in unreadable form.  Plaintiff argues that this information is critical to determine whether she
22 was paid the proper commissions.

23 Defendant states it has produced all documents supporting plaintiff's 2001 commissions and
24 that plaintiff's request for *all* sales records is too broad in scope.  Defendant further states that NAS
25 commissions were determined by manual accounting during the time plaintiff was employed, so no

---

[6] Printouts from "ADP Payroll for Windows" and "Check View" were redacted without explanation  (Ex. H to Knisbacher Decl.).  It appears to the court that these redaction may have been made to protect the personal financial information of other employees.  If this is the case, they do not have to be unredacted.

6

electronic documents exist.  Finally defendant claims that plaintiff has not demonstrated that sales information dating from after her termination is relevant.

One of the plaintiff's primary claims is that she was not paid commissions she was owed. Plaintiff should have access to all sales information for the Gelbach territory during her employment so she may calculate what she believes she is owed in commissions.  Plaintiff also argues that she is entitled to commissions from after her discharge if she was the "substantial procuring" cause of the sale.[7]  Accordingly, all records, summaries, spreadsheets, and information relating to all sales activity in the Gelbach territory, from December 2000 through the end of 2001, must be produced in unredacted form, including all sales orders, purchase orders and booking reports. Additionally, all documents, including emails, relating to, referring to, or commenting on the calculating of plaintiff's commissions, manual or not, should be provided in unredacted form, including any information on decisions to reduce plaintiff's commissions or repay commissions previously reduced.

The documents at Bates no. EMC 00160-163 which appear to be commission information should be produced in a readable sized font (10 pt. or higher).

**C.    Employment Manuals, Policies and Procedures (RFP's Nos. 48-52, 59)**

These RFP's request policies on every topic of employment, including discipline, recruiting, hiring, layoff, compensation, evaluation, supervisory responsibilities, and discrimination.

Plaintiff claims that defendant has failed to produced all responsive documents, and takes issue with the limitations in defendant's responses.  For example, defendant wrote: "EMC has produced all policies that would have applied to Plaintiff while she was employed with the Company and are arguably relevant to the issues in this case."  Yet plaintiff has discovered three pay plans (one from 2000, two from 2001) produced in other litigation against EMC that were not disclosed by defendant. (Knisbacher Decl. Ex. K, K-1, K-2).  Plaintiff claims that these policies are relevant to defendant's

---

[7]At the hearing, defendant's counsel stated that EMC has not searched for or produced information on NAS sales in the Gelbach territory after plaintiff's termination because plaintiff had not asked for this information in one of her 95 RFP's.  However, RFP No. 26 requests: "All BRIO reports, including summary formats, and detail reports by account and line item for all orders booked and shipped in California from 2000 to 2002."  Assuming that BRIO is defendant's sales database and that the Gelbach territory is in California, the court reads this request to includes information relating to NAS sales after plaintiff's termination.  Defendant's somewhat strident assertion that plaintiff did not ask for this information appears to be erroneous.

1    fifteenth affirmative, which plaintiff describes as the *Faragher/Ellerth* defense, or a claim of good faith
2    efforts to prevent discrimination in the workplace.
3        Defendant argues that plaintiff fails to show that EMC withheld any policies that applied to her.
4    It explains that the policies discovered by plaintiff were implemented either before or after she was
5    terminated, or contain the same terms and conditions of the plan produced by EMC.[8] Additionally,
6    defendant argues that it has not pled a *Faragher/Ellerth* defense, which is only relevant in harassment
7    cases, so anti-discrimination policies are not relevant.[9]
8        All employment policies in effect at the time plaintiff was employed, from December 2000
9    through mid-2001, are relevant. Plaintiff should have the opportunity to determine whether EMC
10   diverged from its stated policies in its treatment of her. Policies relating to pay put in effect
11   immediately after plaintiff's termination are also relevant - she may be entitled to pay for that period of
12   time.[10]

### D. RIF Documents and Information (RFP nos. 20 and 73)

These RFPs relate to defendant's decision to select plaintiff for termination, and any documents which "constitute, comment on, or reflect the facts and circumstances" of any comparison between plaintiff an other employees.

Plaintiff complains that defendant has produced only one redacted page relating to the RIF and rankings systems. That document showed the "scores" plaintiff received on an evaluation, and the scores compared of other anonymous employees in her district. Plaintiff had the lowest score and was

---

[8] At the hearing, defendant's counsel stated that EMC had not produced these "alternate" plans because plaintiff had not asked for this information in one of her RFP's. However, RFP Nos. 48-52 request in part: "All manuals, handbooks, policies, procedures, notices, or directives issued by the defendant, that pertain to" discipline, demotion, transfer, layoff, discharge, compensation, fringe benefits, bonus pay, merit raises, and incentives. RFP No. 59 requests: "All documents pertaining to or relating to the plaintiff's contracts of employment with the defendant, including any agreements or "plans," or the employment relationship between the plaintiff and the defendant." Again, the court is unclear how these requests can be read as to not include the withheld discovery.

[9] The *Faragher/Ellerth* defense issue is a red herring. Defendant is correct that this defense is only applicable when determining the vicarious liability of an employer for the *harassing* conduct of its employee. However, defendant does raise the issue of good faith efforts to prevent discrimination in its answer, and thus such policies are relevant pursuant to Fed. R. Civ. P. 26(b) and must be disclosed.

[10] To that end, any information relating to defendant's then-existing policy for the pay of commission that may arise after an employee is terminated should also be produced.

8

thus selected for termination. Defendant provided no information on how the numbers were calculated or who plaintiff was compared to, no underlying data to test the accuracy of the scores, no evaluation forms, no national ranking information, no information on the procedure and methods used for the RIF discussed by the CEO of EMC in a company-wide email, no correspondence between EMC managers and/or employees relating to the RIF, and no notes from the "Boston" meeting at which the management apparently selected plaintiff for termination.

Defendant objects to plaintiff requests on the grounds that they exceed the permissible scope of discovery. However, at the hearing, counsel for defendant represented that defendant has by now produced an unredacted version of the District Stack Ranking Summary. Counsel also stated that defendant had not searched for or provided documents discussing how Kirby Rouser generated the stack ranking document, how employees were ranked, how the competency rating tool was used, and other documentation backing up or relating to the stack ranking, because plaintiff had not asked for that information in any of her 95 RFP's.

Plaintiff is entitled to examine the methodology and criteria, and supporting information and data EMC used to include plaintiff in its RIF. See *Beaird v. Seagate Technology*, 145 F.3d 1159, 1170-1171 (10th Cir. 1991). Moreover, defendant's claim that plaintiff never asked for these documents is belied by a quick reading of plaintiff's First Request for Production.[11] The discovery described above is relevant to plaintiff's case, has been requested by plaintiff, and must be produced by defendant in unredacted form.[12]

//

---

[11] RFP No. 20 requests: "All documents related to the decision to select plaintiff for termination as part of a reduction in force." No. 73 requests: "All documents which constitute, comment on, or reflect the facts and circumstances of any comparison made between the training, experience, abilities, job duties and/or job performance of the plaintiff and other similarly situated employees or applicants."

[12] Specifically, production should include (without limitation): 1) the Sales Rep Competency Model Assessment Tools filled out by plaintiff, other employees, and plaintiff's supervisor, Kirby Rouser, and all instructions for filling out the form; 2) if not previously produced, the District Stack Ranking Summary identified as Bates no. EMC00164 in unredacted form; 3) the sources of the numerical ratings of plaintiff and the other comparators on the stack ranking document; 4) documents related to and created by the Competency Rating Tool and the Competency Rating Tool itself; 5) information on other Stack Rankings involving plaintiff; 6) information on the coding and criteria used in the ranking; 7) documents and correspondence concerning the inclusion of Caron Rakich in the subject RIF; and 8) documents and correspondence regarding the procedures used for the 7,000 layoffs defendant identified in its interrogatory response.

9

E.  **Job Performance and Treatment of Comparator Employees (RFP nos. 28, 57, 60-63, 73)**

These RFPs request information relating to performance improvement plans, personnel files, and ranking information for the employees to whom plaintiff was compared. Additionally, defendant requests logs of all employees hired, promoted, disciplined or discharged by defendant.

Plaintiff argues that the personnel files of district and national employees against whom plaintiff was ranked are critical to her ability to challenge defendant's ranking system and stated "non-discriminatory" reasons for her discharge as pretext.

Defendant objects to producing this information on several grounds. It asserts that confidential employment information of non-parties is irrelevant to plaintiff's claims as there are no facts showing that other employees' circumstances are sufficiently similar to plaintiff's to be meaningful. Defendant further argues that plaintiff's requests infringe on the privacy rights of other employees.

Privacy is protected by the California Constitution. *See* CAL. CONST. art. I, § 1. However, in federal question cases, discovery privileges are governed by federal law. *See Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987). Nevertheless, "federal courts generally should give some weight to the privacy rights that are protected by state constitutions or state statutes." *Id.* "Resolution of a privacy objection . . . requires a balancing of the need for the information sought against the privacy right asserted." *Soto v. City of Concord*, 162 F.R.D 603, 616 (N.D. Cal. 1995).

To the extent plaintiff is requesting information about defendant's employees generally, or non-job performance related information about comparator employees, the request is overbroad. However, plaintiff's request for information relating to the job performance of those employees against whom she was compared, such as performance plans, ranking information, and evaluations, is undeniably relevant to her claim. This information is unavailable from other sources—in fact, defendant has not until recently even disclosed the names of these employees. Accordingly, defendant should produce any information, including emails, and information in their personnel files, relating to those employees' rankings, performance, and evaluation. Plaintiff's requests for employee logs is denied.

//

      **F.**     **Affirmative Action Plans and Statistics (RFP nos. 37-39, 41, 85)**

These RFPs cover documents relating to defendant's affirmative action programs and plans, and statistical data on defendant's workforce.

Plaintiff complains that defendant has failed to produce a complete copy of its Affirmative Action Plan (10/1/00-9/30/01) ("AAP"), instead omitting ten attached exhibits that include defendant's analysis of its utilization of minority and women employees and statistical data. Additionally, plaintiff requests the AAP for 2002, which apparently contains the results of the goals set in 2001. Plaintiff further requests defendant's EEO-1 forms for multiple years (statistical report required by the EEOC for all private employers with 100+ employees) and all studies or reports concerning sex discrimination and workforce breakdown for a 10 year period.

Defendant argues that it has provided all relevant portions of its AAP and EEO-1, and that company-wide statistics are irrelevant in this case. Defendant also argues that public policy supports maintaining the confidentiality of employers' self-analysis because a tool used to promote affirmative action should not be used against an employer in litigation.

An employer's self-critical analysis may be relevant to the question of discriminatory intent and the Ninth Circuit has not recognized a privilege against production of such documents. *Union Pacific Railroad v. Mower*, 219 F.3d 1069, 1076 n. 7 (9th Cir. 2000). Moreover, defendant itself has raised an affirmative defense that it made good faith efforts to enforce and promote its affirmative action policies. Even circuits that recognize a self-critical analysis privilege find that such a defense waives it. *Coates v. Johnson & Johnson*, 756 F.2d 524, 552 (7th Cir. 1985).

Likewise, "statistical evidence is unquestionably relevant in a Title VII disparate treatment case." *Diaz v. American Telephone & Telegraph*, 752 F.2d 1356, 1362 (9th Cir. 1985). Although such data may alone be insufficient to establish a prima facie case of discrimination in disparate treatment cases, it is helpful in arguing that an employer's articulated reason for the employment decision is pretextual. *Id.* at 1363. Accordingly, defendant is ordered to produce its complete AAP and EEO-1 forms for the years 2000, 2001, and 2002.

//

//

**G.    Past Complaints of Discrimination and Investigations (RFP nos. 34 and 74)**[13]

These FRP's relate to prior complaints of discrimination or harassment committed by EMC and its employees, and documents relating to any internal investigation conducted as a result of plaintiff's claims.

Defendant asserts that plaintiff is not entitled to documents regarding past complaints of discrimination, especially without limitation as to time, geography or subject matter, because the treatment of other employees is not relevant to establishing whether defendant discriminated against plaintiff. Furthermore, defendant claims that it has not pled a *Faragher/Ellerth* good faith defense, and thus has not waived its claims to attorney-client privilege on information relating to internal investigations.

Plaintiff's cites hostile work environment and sexual harassment cases to demonstrate that an employer's knowledge of a hostile environment or incidents of harassment is relevant, but provides no support that such evidence is relevant to a claim of wrongful termination on the basis of gender. Accordingly plaintiff's request for information relating to past complaints is denied.

However, documents related to internal investigations of plaintiff's complaint are relevant to defendant's intent in this case. Defendant asserts attorney-client privilege but has not produced a privilege log. Moreover, factual information is not protected by attorney client privilege. Accordingly, all factual information related to (or discovered during) defendant's internal investigations must be disclosed to plaintiff. Any information withheld on the basis of privilege must be included in a privilege log as described above.

**H.    Electronic Databases**

Plaintiff asserts that defendant possesses much of the requested information in electronic format, organized in various databases for sales and personnel information. She argues that these databases were produced in a class action suit currently pending against EMC, and the same should be produced here. Plaintiff claims that the disclosure of electronic sales databases used for calculating

---

[13] Plaintiff's brief misquotes her RFP's. "All documents relating to all inquiries or investigations conducted as a result of plaintiff's claim or allegation of discrimination" is from RFP no. 74, not RFP no. 76.

12

plaintiff's commission are necessary because paper copies do not show the equations used in the calculations.

Defendant correctly argues that the requests for electronic databases are far too broad. While some of the information contained in these databases is required to be produced, production of entire databases would result in the disclosure of enormous amounts of information irrelevant to this case. Plaintiff is correct that the Federal Rules do contemplate the production of electronic discovery, but they do not mandate it. *See, e.g.*, FED. R. CIV. P. 34(a), advisory committee notes to 1970 amendment.

The court notes that where defendant has been ordered to produce large quantities of information, such as sales records in the Gelbach territory, it may very well be easier to produce this information in electronic format. The court encourages defendant to make its production in the most efficient and straightforward manner possible (in readable format, of course), but will not, based on the present record, order it to produce discovery in a particular format.

**I.      Email Files**

Plaintiff further contends that her email files from the time of her employment, as well as the email files of her supervisor and comparators, should be produced as they may contain information related to the ranking and evaluation system used to select plaintiff for the RIF.[14]

Defendant argues that disclosure of emails invades the privacy rights of non-parties. It further states that it does not retain any email files for more than one month, and does not keep any back-up of its electronic data.[15]

While defendant certainly should not have to produce complete email files from plaintiff's supervisor and comparator employees, defendant must search its email files for information relevant to any other request for production of documents. For example, the court has ordered the production of information relating to the ranking and evaluation of plaintiff and her comparators. Any emails relevant to these rankings and evaluations, or any other permitted area of discovery, must be produced,

---

[14] It is true that plaintiff copied her email files before leaving her employment, and has since produced those to defendant. However, requiring defendant to produce what emails of plaintiff's it still has could be relevant on the question of its email retention policy.

[15] The court has ordered defendant to produce a declaration describing its email retention policy.

whether written by plaintiff, comparator employees, supervisors, or others. Likewise, email searches should be performed for topics of discovery discussed in this order.

## ORDER

Based on the foregoing, plaintiff's motions to compel are granted in part and denied in part. Defendant must produce discovery in accordance with this order no later than December 1, 2005.

**IT IS SO ORDERED.**

Dated: 10/28/05

/s/ Howard R. Lloyd
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

1   THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WILL BE SENT TO:

2   Kurt Bockes                kbockes@littler.com, jwong@littler.com

3   Margaret Hart Edwards      MHEdwards@littler.com, PPrill@littler.com

4   Alden Knisbacher           aknisbacher@yahoo.com

\* Counsel are responsible for providing copies of this order to co-counsel who have not registered under the Court's ECF system.

Dated: 10/28/05

                                                /s/ RNR
                              Chambers of Magistrate Judge Lloyd

**United States District Court**
For the Northern District of California